## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MCLAREN FLINT,

        *Plaintiff,*

  v.

ALEX M. AZAR II, Secretary, Department of
Health and Human Services,

        *Defendant.*

Civil Action No. 18-2005 (RDM)

## MEMORANDUM OPINION

Under the Medicare Statute, 42 U.S.C. § 1395 *et seq.*, a provider "dissatisfied with a final determination" of "the amount of total program reimbursement due to the provider" for Medicare-covered services (known as notice of program reimbursement or "NPR") may appeal the NPR within 180 days to the Provider Reimbursement Review Board (the "Board"), *id.* § 1395oo(a)).  Separate and apart from the statutory appeals process, the Secretary of the Department of Health and Human Services ("Secretary") has established a process that allows NPRs to be reopened and revised within three years.  42 C.F.R. § 405.1885(a)(1), (b)(1), (b)(2)(i).  If an NPR is reopened, and if the initial NPR is revised, the revised NPR ("RNPR") is "considered a separate and distinct determination" that the provider may appeal within 180 days. *Id.* § 405.1889(a).  Unlike the broad scope of the Board's review of an initial NPR, however, an appeal of a RNPR is "limited to the specific issues revisited on reopening."  *HCA Health Servs. of Okla., Inc. v. Shalala*, 27 F.3d 614, 615 (D.C. Cir. 1994) ("*HCA*").

Plaintiff, McLaren Flint, is a Medicare-participating hospital that joined a group appeal based on an RNPR in which the only item revised upon reopening was the hospital's number of

"additional Medicaid days to be used" in calculating Plaintiff's reimbursement.  AR 709; Dkt. 20-1 at 11–12.  The providers in the group appeal, including Plaintiff, later requested expedited judicial review ("EJR"), which requires that the Board individually assess jurisdiction over each provider in the group appeal.  Dkt. 20-1 at 12; *see also* 42 C.F.R. § 405.1842(f)(1), (e)(1); *id.* § 405.1840(b); *id.* § 405.1837(a).  The Board determined that it lacked jurisdiction over Plaintiff's challenge because the common issue in the group appeal—the correct allocation of Medicare Part C days—was not a matter revised in the reopening of Plaintiff's NPR.  AR 9.  Plaintiff then brought this suit, alleging that the Board's determination was arbitrary and capricious because, according to Plaintiff, the number of Medicaid-eligible days is interconnected with the allocation of Medicare Part C days, and the Board incorrectly treated the number of Medicaid eligible days as a separate issue.  Dkt. 1.  Before the Court are the parties' cross-motions for summary judgment.  Dkt. 16; Dkt. 20.  For the reasons explained below, the Court will **GRANT** Defendant's motion, and will **DENY** Plaintiff's motion.

## I.  BACKGROUND

### A.    Statutory and Regulatory Background

1.     *The DSH Adjustment*

The Medicare Act, 42 U.S.C. § 1395 *et seq.*, established a federal health insurance program for the elderly and people with disabilities.  *See Fischer v. United States*, 529 U.S. 667, 671 (2000).  The Medicare statute is divided into several "Parts," *see Cares Cmty. Health v. U.S. Dep't of Health & Human Servs.*, 944 F.3d 950, 953 (D.C. Cir. 2019), three of which are relevant here:  Parts A, C, and E.  Part A has existed since the Medicare statute was enacted in 1965, *see Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019), and is sometimes referred to (along with Part B) as "[t]raditional Medicare," *see, e.g.*, *Cares Cmty. Health*, 944 F.3d at 953.

Under Part A, the federal government pays hospitals and other service providers "directly for providing covered patient care," *Allina Health Servs.*, 139 S. Ct. at 1809; *see also* 42 U.S.C. §§ 1395c–i-5.   In 1997, "Congress created 'Medicare Part C,' sometimes referred to as Medicare Advantage." *Allina Health Servs.*, 139 S. Ct. at 1809.  Under Part C, eligible persons "may choose to have the government pay their private insurance premiums rather than pay for their hospital care directly." *Id.*  Part E, as relevant here, sets out the methods that the Secretary uses to calculate reimbursement rates for Medicare-participating hospitals.[1]  *See Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013) (citing 42 U.S.C. § 1395ww(d)).  One such method, the disproportionate share hospital ("DSH") adjustment, is central to this case.  *See Baptist Mem. Hosp. v. Sebelius*, 603 F.3d 57, 60 (D.C. Cir. 2010) (discussing the DSH calculation).

The DSH adjustment is used to calculate whether and how large an "adjustment" (an increased reimbursement) a provider should receive because the hospital "serves a significantly disproportionate number of low-income patients."  42 U.S.C. § 1395ww(d)(5)(F)(i)(I).  The DSH adjustment "is made because hospitals with an unusually high percentage of low-income patients generally have higher per-patient costs; [and], Congress therefore found [that such hospitals] should receive higher reimbursement rates." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 150 (2013) (citing H.R. Rep. No. 99-241, pt. 1, p.16 (1985)).  A DSH adjustment is calculated, in part, based on the hospital's "disproportionate patient percentage" ("DPP"), which is a "proxy" for the "number of low-income patients a hospital serves." *Ne. Hosp. Corp. v. Sebelius*, 657

---

[1]  Medicare also includes Parts B and D.  "Part B is an optional supplemental insurance program that pays for medical items and services not covered by Part A, including outpatient physician services, clinical laboratory tests, and durable medical equipment." *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1395f(a)-(b), 1395x(u)).  Part D is a "prescription drug benefit program." *Cares Cmty. Health*, 944 F.3d at 954.

F.3d 1, 3 (D.C. Cir. 2011) (citing 42 U.S.C. § 1395ww(d)(5)(F)(v)–(vii); H.R. Rep. No. 99–241, pt. 1, at 17 (1985)) (quotation marks omitted).  The DPP, in turn, "represents the sum of two fractions, commonly called the 'Medicare fraction' and the 'Medicaid fraction.'"  *Id.*  The bigger the sum, the bigger the DSH adjustment.  *See Allina Health Servs.*, 139 S. Ct. at 1809.

The Medicare fraction (sometimes called the SSI fraction) "asks how much of the care the hospital provided to Medicare patients in a given year was provided to *low-income* Medicare patients."  *Allina Health Servs.*, 139 S. Ct. at 1809; *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 24 (D.D.C. 2008) (explaining that "the Medicare fraction . . . is often referred to as the SSI fraction").  The fraction's numerator is the total number of patient days "the hospital spent caring for Part-A-entitled patients who were *also* entitled to income support payments under the Social Security Act."  *Allina Health Servs.*, 139 S. Ct. at 1809; (citing 42 U.S.C. § 1395ww(d)(5)(F)(iv)(I)); *Baystate Med. Ctr*, 545 F. Supp. 2d at 24 (explaining that the time is measured by "the number of hospital inpatient days").  The fraction's denominator is the total number of patient days "the hospital spent caring for patients who were 'entitled to benefits' under Part A."  *Allina Health Servs.*, 139 S. Ct. at 1809.

The Medicaid fraction, in turn, "accounts for the number of Medicaid patients—who, by definition, are low income—[who are] *not* entitled to Medicare."  *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014).  "The numerator is the number of patient days attributable to patients who (for such days) were eligible for Medicaid, but 'not entitled to benefits under [Medicare] Part A.'"  *Id.* (quoting 42 U.S.C. § 1395ww(d)(5)(F)(iv)(II).  The denominator is the hospital's "total number of patient days, regardless of whether the patients were enrolled in a federal medical benefits program."  *Id.* (citing 42 U.S.C. § 1395ww(d)(5)(F)(iv)).  The following chart, helpfully provided by the Court Appeals in

*Northeast Hospital Corp. v. Sebelius*, 657 F.3d 1, 3 (D.C. Cir. 2011), summarizes the two

fractions:

|  | **Medicare Fraction** | **Medicaid Fraction** |
|---|---|---|
| Numerator | Patient days for patients "entitled to benefits under Part A" and "entitled to SSI benefits" | Patient days for patients "eligible for [Medicaid]" but not "entitled to benefits under Part A" |
| Denominator | Patient days for patients "entitled to benefits under Part A" | "Total number of patient days" |

Since the enactment of Medicare Part C in 1997, Balanced Budget Act of 1997, Pub. L.

No. 105-33, 111 Stat. 251 (codified as amended at 42 U.S.C. §§ 1395w-21 to w-28), several

cases have addressed whether and how Medicare Part C patient days should be counted, *see*

*Allina Health Servs.*, 139 S. Ct. at 1810 (discussing this history).  The heart of the issue is

whether "Part C patients should be counted as 'entitled to benefits under' Part A when

calculating a hospital's Medicare fraction."  *Id.*  Because Part C patients "tend to be wealthier

than patients who opt for traditional Part A coverage," counting Part C patient days in the

Medicare fraction "makes the [Medicare] fraction smaller and reduces hospitals' payments

considerably."  *Id.*  In addition, because "the statute unambiguously requires that Part C days be

counted in one fraction or the other," *Allina Health Servs.*, 746 F.3d at 1108, if Part C days are

excluded from the Medicare fraction, they must then be counted in the Medicaid fraction, which

could potentially increase the payments to hospitals.  The decision about how to allocate Part C

days has serious financial ramifications for Medicare-participating hospitals.  *See id.* (observing

that the "binary choice" could have a potential financial impact "in the hundreds of millions of

dollars").  This issue has yet to be fully resolved.  *See Allina Health Servs.*, 139 S. Ct. at 1810

("Challenges to the [agency's most recent] rule are pending.").

2.    *Statutory Appeals and Reopening Appeals*

To obtain Medicare reimbursement payments, participating hospitals must "submit cost reports to contractors acting on behalf of HHS" known as Medical administrative contractors ("MACs"). *Auburn Reg'l Med. Ctr.*, 568 U.S. at 150; *see also Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 291 (D.C. Cir. 2018) (noting that MACs were previously referred to as fiscal intermediaries). At year end, "the Centers for Medicare & Medicaid Services (CMS) calculates the [Medicare] fraction for each eligible hospital and submits that number to the [MAC] for that hospital." *Auburn Reg'l Med. Ctr.*, 568 U.S. at 150. Using the provider's "cost reports" and the CMS fraction, the MAC then "determine[s] the total payment due" to the hospital and issues an NPR informing the hospital "how much it will be paid for the year." *Id.* A provider that "is dissatisfied with a final determination . . . as to the amount of total . . . reimbursement due," 42 U.S.C. § 1395oo(a)(1)(A)(1), has 180 days to appeal to the Board, *see Saint Francis Med. Ctr. v. Azar*, 894 F.3d at 292 (citing 42 U.S.C. § 1395oo(a)(3)). If a provider timely appeals, *see* 42 C.F.R. § 405.1835(a)(3), and if the Board has jurisdiction, *see* 42 C.F.R. § 405.1840, the Board will conduct a hearing and render a decision regarding the total reimbursement due. 42 C.F.R. § 405.1845(e), (g). That decision is then "final and binding on the [provider] . . . unless the hearing decision is reversed, affirmed, modified, or remanded" by the Secretary within 60 days. 42 C.F.R. § 405.1871(b)(1); *see also* 42 U.S.C. § 1395oo (providing the statutory framework for Board appeals).

In filing an appeal, providers may—and, in some cases, must—proceed as a group rather than individually. *See* 42 U.S.C. § 1395oo(b); 42 C.F.R. § 405.1837. Under the permissive group appeals process, "any group of providers" may bring a group appeal if (1) "each provider of services in [the] group would, upon filing of an appeal . . . , be [individually] entitled to . . . a

hearing," except that providers need not individually satisfy the amount in controversy requirement; (2) "the matters in controversy involve a common question of fact or interpretation of law or regulations;" and (3) the aggregate amount in controversy exceeds $50,000.  42 U.S.C. § 1395oo(b); *see also* 42 C.F.R. § 405.1837(a) (setting forth the requirements for a group appeal, including the requirement that the provider "satisfies individually the requirements for a Board hearing").  Under the mandatory group appeals process, providers "under common ownership or control . . . must" bring a group appeal "with respect to any matter involving an issue common to [those] providers."  42 U.S.C. § 1395oo(f)(1); *see also* 42 C.F.R. § 405.1837(b)(1) (providing for "[m]andatory use of group appeals" in certain instances).  Regardless of whether a group appeal is mandatory or permissive, group appeals are limited in scope.  "The Board may not consider, in one group appeal, more than one question of fact, interpretation of law, regulations, or CMS Rulings that is common to each provider in the appeal."  42 C.F.R. § 405.1837(f)(2).  If an appeal "involve[s] more than one factual or legal question common to each provider," the Board must create a separate appeal case for each common issue.  *Id.* § 405.1837(f)(2)(ii).

If a provider seeks to appeal a legal question that it believes the Board lacks authority to decide (for reasons unrelated to the "Board's jurisdiction to conduct a hearing on the matter"), then the provider may seek expedited judicial review.  *See Affinity Healthcare Servs. v. Sebelius*, 746 F. Supp. 2d 106, 108 (D.D.C. 2010); 42 C.F.R. § 405.1842(a)(1) (providing that the Board may grant EJR only if it has "jurisdiction to conduct a hearing on the matter"); 42 U.S.C. § 1395oo(f)(1).[2]  To obtain EJR, a provider must submit a request that includes "an explanation

---

[2]  The EJR regulation states that it is implementing "section 1878(f)(1) of the [Social Security] Act."  42 C.F.R. § 405.1842.  That provision is codified at 42 U.S.C. § 1395oo(f)(1).  *See Methodist Hosp. v. Sullivan*, 799 F. Supp. 1210, 1213 (D.D.C 1992), *rev'd sub nom. on other grounds*, *Adm'rs of the Tulane Educ. Fund v. Shalala*, 987 F.2d 790, 798 (D.C. Cir. 1993).

of why the provider believes the Board has jurisdiction . . . over each matter at issue and no authority to decide each relevant legal question" and "[a]ny documentary evidence the provider believes supports the request."  42 C.F.R. § 405.1842(d).  If the Board (1) makes a finding that it "has jurisdiction to conduct a hearing on the specific matter at issue in accordance with § 405.1840," but (2) that it "lacks the authority to decide a specific legal question relevant to the specific matter at issue because the legal question is a challenge either to the constitutionality of a provision of a statute, or to the substantive or procedural validity of a regulation or CMS ruling," *id.* § 405.1842(f)(1)(ii), then it "must grant [the] EJR [request]," *id.* § 405.1842(f)(1).  Once an EJR request is granted, the provider may then "file a complaint in a [f]ederal district court in order to obtain EJR of the legal question."  *Id.* § 405.1842(g)(2).  A "group of providers may request the Board to grant EJR."  42 C.F.R. § 405.1842(b)(2).

Separate and apart from the statutory appeals process, the Secretary has established a regulatory process that allows a MAC to "reopen" an NPR to adjust specific components used to calculate the reimbursement.  *See HCA*, 27 F.3d at 618–22 (explaining that the reopening process is a regulatory process separate from the statutory appeals process).  In general, an NPR is "final and binding on the party or parties to such determination unless" the party timely requests an appeal.  *See* 42 C.F.R. § 405.1807.  After an NPR becomes final, however, a MAC may reopen it "with respect to specific findings on matters at issue in [the initial NPR]," either at the provider's request or on the MAC's own initiative.  *See* 42 C.F.R. § 405.1885(a)(1)–(2).  When an NPR is reopened, the MAC may reconsider only "specific findings on matters at issue in [the original] determination."  *Id.* § 405.1885(a).  "A specific finding on a matter at issue may be legal or factual in nature or a mixed matter of both law and fact."  *Id.* § 405.1885(a)(1)(i).

If an NPR is reopened, and if the MAC makes a revision, the RNPR is "considered a separate and distinct determination," which the provider may then appeal. 42 C.F.R. § 405.1889. Such an appeal is limited in scope, however. "Only those matters that are specifically revised in [the] revised determination . . . are within the scope of any appeal of the revised determination," and "[a]ny matter that is not specifically revised (including any matter that was reopened but not revised) may not be considered in any appeal of the revised determination." *Id.* § 405.1889(b).

## B.      Factual and Procedural Background

Plaintiff, McLaren Flint, is a Medicare-participating provider of hospital services. *See* AR 18–19; Dkt. 1 at 1 (Compl. ¶ 1). On April 9, 2013, the MAC assigned to McLaren Flint issued an NPR for the year-long cost reporting period ending on September 30, 2008. AR 704. Although the NPR advised Plaintiff that if it disagreed with the determination it could request a hearing "within 180 days following receipt of the NPR," *id.*, Plaintiff has not alleged, and the administrative record nowhere indicates, that it ever appealed the original NPR. *See* Dkt. 20-1 at 11. About five months after the original NPR was issued, the MAC notified Plaintiff of its "intent to reopen the [FY 2008] cost report settlement." AR 709 (notice dated Sept. 5, 2013). Specifically, the MAC "intend[ed] to review additional Medicaid days to be used in the calculation of the [DSH] adjustment and Low Income Patient payment." *Id.* To facilitate that review, the MAC instructed Plaintiff to "resubmit the additional Medicaid days listings with the [diagnosis related group ('DRG')] listed for each patient" and directed Plaintiff to "verify that th[ose] listings . . . [did] not include any claims for Labor & Delivery days, Dual Eligible days,

Medicare [Part C] days, or State Assistance days."[3]  *Id.* (emphasis added).[4]  In other words, in

the reopening, the MAC considered and adjusted only the Medicaid eligible days and expressly

excluded any consideration of Part C days.  *See* AR 709; AR 9.

On May 15, 2014, the MAC issued an RNPR that reflected an adjusted number of

Medicaid days in the hospital's Medicaid fraction.  AR 703; AR 9 (noting that the only

adjustment the MAC made was "to include additional Medicaid days").  On November 4, 2014,

Plaintiff filed a request to join the "McLaren Health Care 2008 DSH Medicaid Fraction Part C

Days" group appeal, AR 622, an appeal in which the providers maintained that "the Medicare

[Part C days] should be counted in the Medicaid Fraction rather than the Medicare Fraction," AR

606.  The request was submitted within the 180-day time limit for Plaintiff to seek an appeal of

its RNPR but well outside the 180-day period for seeking review of its initial NPR.  *See* AR 704

(initial NPR dated April 9, 2013).  Consistent with that timing, Plaintiff indicated that it was

appealing the RNPR.  *See* AR 623.  The next day, the request was approved, and McLaren Flint

was added to the group appeal.  *See* AR 612 (indicating that McLaren Flint joined the group on

November 5, 2014).

On June 19, 2018, Plaintiff and the other providers in the group appeal submitted a

"request [for] expedited judicial review" and, in support of that request, submitted

"[j]urisdictional [d]ocumentation for each case."  AR 449; AR 600 (cover sheet for the

---

[3]  "A DRG is a group of related illnesses to which the Secretary assigns a weight representing 'the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients.'"  *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 49 (D.C. Cir. 2015) (quoting *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011)).

[4]  "Part C was formerly referred to as 'Medicare + Choice' and is currently referred to as 'Medicare Advantage.'"  *Baptist Med. Ctr. v. Burwell*, No. 11-cv-899, 2019 WL 978957, at *3 n.2 (D.D.C. Feb. 28, 2019).  For clarity, the Court will refer to it as "Part C."

providers' jurisdictional documentation).  On June 28, 2018, the Board issued a decision with

respect to jurisdiction and the EJR.  AR 2, 9.  The Board concluded that it had jurisdiction over

all the providers in the group appeal except for Plaintiff.  *See* AR 9.  As it explained, each

participant in the group, except for Plaintiff, "had Part C days excluded from the Medicaid

fraction, had a specific adjustment to the [Medicare] fraction, or properly protested the appealed

issue such that the Board had jurisdiction to hear their respective appeals."  *Id.*  Plaintiff, in

contrast, appealed from "a May 15, 2014 revised NPR," and its appeal "referenced [only] audit

adjustment #5[,] which was an adjustment to include additional Medicaid days to be included in

the DSH calculation."  *Id.*  As a result, the Board concluded that the adjustment that is the basis

of Plaintiff's appeal "did not adjust Medicare Part C days, as required for jurisdiction."  *Id.*

On August 27, 2018, Plaintiff initiated this action.  Dkt. 1.  It claims that the Board's

decision that it lacked jurisdiction over Plaintiff's appeal is "arbitrary and capricious and not in

accord[ance] with the law."  *Id.* at 6 (Compl. ¶ 26).  It seeks an order "finding that the [Board]

erred," "reinstating [its] appeal with the [Board]," and an award of "all costs and attorney fees."

*Id.* (Prayer for Relief).  The parties subsequently cross-moved for summary judgment, Dkt. 16;

Dkt. 20, and, as directed by the Court, the agency filed a complete copy of the administrative

record, Dkt. 24.  On May 22, 2020, the Court heard oral arguments on the pending cross-

motions.  Minute Entry (May 22, 2020).

## II.  LEGAL STANDARD

The Court's jurisdiction is based on the Medicare statute, 42 U.S.C. § 1395oo(f)(1),

which provides that judicial review is governed by the standards of the Administrative Procedure

Act ("APA"), 5 U.S.C. § 701 *et seq.*; *Humana, Inc. v. Heckler*, 758 F.2d 696, 698–99 (D.C. Cir.

1985) ("The Medicare Act itself incorporates the standard of review set out in section 706 of the

Administrative Procedure Act."). "[W]hen a party seeks review of agency action under the APA[,] . . . [t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *New Lifecare Hosps. of Chester Cty. LLC v. Azar*, 417 F. Supp. 3d 31, 41 (D.D.C. 2019) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)) (alteration in original). The Court will grant summary judgment to the agency if it did not "violate[] the Administrative Procedure Act by taking action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Forsyth Mem'l Hosp., Inc. v. Sebelius*, 639 F.3d 534, 537 (D.C. Cir. 2011) (quoting 5 U.S.C. § 706(2)). Although this review is "fundamentally deferential," *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012), the APA nonetheless requires not only that "an agency's decreed result be within the scope of its lawful authority" but also that "the process by which it reaches that result . . . be logical and rational," *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

## III. ANALYSIS

Although this case arises from a complex statutory and regulatory regime, the dispute between the parties is narrow. The parties do not dispute that the Board could grant Plaintiff's EJR request only if it had jurisdiction over Plaintiff's appeal. *See* Dkt. 21 at 9 ("Before the Board can consider EJR, it must first determine its jurisdiction over each provider in the group appeal."); Dkt. 20-1 at 10; 42 C.F.R. § 405.1842(f)(1) (providing that the Board may grant an EJR only if it has "jurisdiction to conduct a hearing on a specific matter at issue"). Nor is it disputed that the Board's jurisdiction turns on whether Plaintiff is individually entitled to a Board hearing on the specific matter at issue in the group appeal. *See* Dkt. 16-1 at 10 (citing 42 C.F.R.

§ 405.1889 (b)(1)); Dkt. 20-1 at 19.  The parties' dispute, instead, is focused on whether the

Board correctly determined that Plaintiff did not have a right to a Board hearing on the issue that

was the subject of the group's EJR request—that is, the proper allocation of the Medicare Part C

days.  *See* AR 2, 9; *see also* Dkt. 16-1 at 10–11 (arguing that the Board erroneously concluded

that McLaren Flint could not appeal the Part C days issue); Dkt. 20-1 at 7 ("Because the issues

Plaintiff appealed to the [Board] were never reopened or revised, the Board correctly held that it

lacked jurisdiction to entertain Plaintiff's appeal.").

In the Board's view, Plaintiff did not have a right to participate in the group EJR request

relating to the allocation of the Medicare Part C days because Plaintiff timely appealed only its

RNPR and not its original NPR.  *See* Dkt. 20-1 at 18–21.  This is consistent with the reopening

regulation, which provide that, if a provider appeals an NPR revised after a reopening—that is,

an RNPR—then "any review by the Board must be limited solely to those matters that are

specifically revised."  42 C.F.R. § 405.1835(a)(1); *see also id.* 405.1887(b)(1) ("Only those

matters that are specifically revised in a revised determination or decision are within the scope of

any appeal of the revised determination or decision.").  In its jurisdictional decision, the Board

explained that the RNPR that Plaintiff appealed from "did not reopen or adjust the hospital's

Medicare Part C days or the [Medicare] fraction component of the DSH payment calculation."

Dkt. 20-1 at 16 (citing AR 6–7).  To the contrary, the MAC instructed Plaintiff to verify that the

information it submitted for reconsideration in the reopening did not include Part C patient days.

*See* AR 709; AR 9.  The MAC, in other words, limited the reopening to the count of Medicaid

eligible days and expressly excluded any consideration about the proper count or allocation of

Part C days.  Because the allocation of Part C days was not a matter specifically adjusted in the

reopening, the Board concluded that Plaintiff was not entitled to participate in the group request

for EJR relating to the proper allocation of the Medicare Part C days.  *See* AR 9; Dkt. 20-1 at 16, 18–21.

The Board's decision to limit the scope of Plaintiff's appeal to only those matters (or "issues") specifically adjusted in the reopening relies on an application of what is known as the "issue-specific" interpretation of its reopening regulations.  *See Empire Health Found. v. Burwell*, 209 F. Supp. 3d 261, 271 (D.D.C. 2016) ("The[] appeals of revised NPRs are . . .'issue-specific,' a limitation designed to 'forestall repetitive or belated litigation of stale eligibility claims.'" (quotation omitted)).  Every circuit that has addressed the question, including the D.C. Circuit, has upheld this interpretation as not only permissible, *see Emanuel Med. Ctr., Inc. v. Sebelius*, 37 F. Supp. 3d 348, 357 (D.D.C. 2014) ("[T]he Secretary's issue-specific interpretation of the [reopening] regulations has been upheld by all other Circuits to address it."), but also one that furthers the statutory purpose.  As the D.C. Circuit explained in *HCA Health Services of Oklahoma v. Shalala*, 27 F.3d 614 (D.C. Cir. 1994), the Board's jurisdiction over an RNPR does not originate from the statutory appeals process and is, instead, a separate regulatory process that the Secretary permissibly created using his "general rulemaking authority."  *See id.* at 618–22. That is, the "right of a provider to seek reopening exists only by grace of the Secretary."  *Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 454 (1999).  The fact that an NPR may be reopened, however, does not mean that a provider may use that reopening to launch a broad appeal on all matters within the original NPR.  Rather, the reopening regulations limit the scope of an RNPR appeal only to "the specific issues revisited on reopening."  *HCA*, 27 F.3d at 620–21.  As the D.C. Circuit explained, by ensuring that the appeals deadline is not ignored "solely because certain aspects of the NPR have been reopened," the issue-specific approach furthers Congress's determination to limit the period to appeal an NPR to 180-days.  *Id.*

In opposing Defendant's motion for summary judgment, Plaintiff does not directly contest the validity of the issue-specific approach and, instead, argues that the Board's application of that approach in the present context is arbitrary and capricious in light of the broader context of Plaintiff's group appeal, which it refers to as the "main appeal." *See* Dkt. 16-1 at 5, 13; *see also* Dkt. 22 at 3 ("It is important to discuss the main appeal from which Plaintiff Hospital was dismissed to determine what the main issue is.").  Although Plaintiff is far from clear about what it means by the "main appeal," its point is clarified by the appendix it has attached to its motion and to which it cites in its discussion. *See* Dkt. 16-1 at 9 (citing to the first document in Plaintiff's appendix).[5]  The first document in that appendix, *see* Dkt. 16-2 at 4, is a "Group Appeal Request" filed by Plaintiff's "parent organization," "McLaren Health," on May

---

[5]  The parties in general, and Plaintiff in particular, have been a bit hazy about the complex procedural history underlying the McLaren Group Appeal.  In discussing the McLaren Group Appeal, for example, Plaintiff at times refers to it as the "main appeal," Dkt. 21 at 3, and at other times terms it the "original appeal," *id.* at 2.  There is also some indication that McLaren Flint at one time was removed from the group but later added back in. *See* AR 612; Dkt. 21 at 5–6 (noting that McLaren Flint was dismissed from the "original appeal").  The Court has sought to clarify what Plaintiff meant by reviewing the extensive administrative record, which is well-over 2,000 pages, and cross-referencing it with the appendix Plaintiff has relied on.  At bottom, however, the minutia of the group appeal's procedural history is not relevant because the Board must always decide jurisdiction provider-by-provider and issue-by-issue. *See* 42 C.F.R. § 405.1840(b) (the Board has jurisdiction if the "provider has a right to a Board hearing . . . as part of a group appeal"); *id.* § 405.1837(a) (providing that "a provider . . . has a right to a Board hearing, as part of a group appeal . . . only if . . . [it] satisfies individually the requirements for a Board hearing," except the amount in controversy requirement); *id.* § 405.1840(b) (jurisdiction is not dispensed in gross and instead "must be determined separately for each specific matter at issue in each [MAC] determination . . . under appeal"); *see also* Dkt. 21 at 9 ("Before the Board can consider EJR, it must first determine its jurisdiction over each provider in the group appeal.").  In short, regardless of what the "main" or "original" group appeal challenged, McLaren Flint must individually satisfy the requirements for a Board hearing.

3, 2013, *see* AR 660,[6] about a month after Plaintiff received its original NPR on April 9, 2013, *see* AR 704.[7]

As relevant to Plaintiff's argument, the "Statement of Issue" in the Group Appeal Request states that "[t]he Participating Providers assert that the Medicare [fraction] is improperly understated due to CMS's erroneous inclusion of inpatient days attributable to Medicare [Part C] patients in both the numerator and denominator of the fraction." AR 665. Relatedly, the statement of issues argues that Medicare Part C days "that are also Dual Eligible (DE) [d]ays" should "be counted in the *Medicaid numerator*." AR 665 (emphasis added). The Board eventually approved the providers' request to form a group appeal and the "McLaren Health Care 2008 DSH Medicare/Medicare Advantage Days" appeals group was formed ("McLaren Group Appeal"). *See* AR 437. On November 4, 2014, McLaren Flint requested to join the McLaren Group Appeal, *see* AR 623, and it was added to the group appeal the following day, *see* AR 612.

At the time Plaintiff sought to join the McLaren Group Appeal, the Board was "splitting . . . appeal requests into separate groups, claiming that if both [Medicare and Medicaid] fractions were involved in the argument, that required two separate appeals, one for each fraction." AR 689. Indeed, the Board required separate appeals for each fraction even if each appeal focused on the same legal question—the Board's decision to count Medicare Part C days in the Medicare fraction. *Id.* A "[j]urisdictional [b]rief" in the administrative record indicates, however, that the Board later decided to treat such appeals as posing one "issue," regardless of

---

[6] Because this document is in the administrative record, *see* AR 660–680, the Court will cite to the relevant portions of the administrative record rather than to Plaintiff's appendix.

[7] Although the providers listed in that request include two McLaren-owned providers, neither of which is McLaren Flint, *see* AR 664, the request also indicated that the group is not "fully formed" and that it did not "include all the providers that will be in the group," AR 661.

which fraction formed the basis of the provider's appeal.  *Id.*  Given the significance of this

document to Plaintiff's argument, the Court will quote the relevant passages at length:

> Around April of 2013, the Board began splitting [providers'] appeal requests
> into separate groups, claiming that if both fractions were involved in the
> argument, that required two separate appeals, one for each fraction.  Between
> May[] 2013 and July[] 2015, providers generally filed distinct appeals for [the]
> two fractions for participating hospitals but sometimes only appealed the
> Medicare Fraction if there was no Medicaid adjustment or similar jurisdictional
> reason.  On July 21, 2015, the Board invited Providers to a conference call to
> discuss an expedient consolidation process for its 200+ cases (at that time)
> related to this issue.  Th[e] conference call took place on August 25, 2015 with
> the Chairman participating.
>
> In [the conference] call, Providers' representatives explained the connectivity
> between the Medicaid and Medicare Fractions *for this issue only*; [in the
> Providers' view,] there [could be] no Medicaid Fraction issue without resolution
> of the Medicare Fraction because the issue pertains to the same set of days.  In
> other words, [according to Providers,] *it really is one issue, namely the Medicare
> [Part C] days should be counted in [the] Medicaid Fraction rather than the
> Medicare Fraction*.  While that obviously affects the calculation of both
> fractions, it does so through the resolution of one legal question.

AR 689 (emphasis added).  According to the brief, the "Board accepted [the Providers'

argument] and agreed to consolidate the 200+ [appeals] groups."  *Id.*  The brief further states that

the Board later issued "consolidation instructions" in a "letter dated June 14, 2016," and directed

providers to file the "brief in support of jurisdiction . . . whenever the provider list differs

between the to-be consolidated Medicare and Medicaid fraction cases for a particular year."  *Id.*

Although the June 14, 2016 letter does not appear in the administrative record, the

McLaren Group attached a copy of the jurisdictional brief to its March 28, 2018 request to

consolidate several pending appeals, *see* AR 685 (indicating that the "jurisdictional brief" was

enclosed as "Exhibit P-2"); AR 689–90 (Exhibit P-2), and, in response to that request, on April

2, 2018, the Board recognized that it had "recently agreed with [the providers'] position, that the

issue of whether the Medicare [Part C] [d]ays should be counted in the Medicaid Fraction rather

than the Medicare Fraction is one issue," and, accordingly, granted the McLaren Group's

consolidation request.[8]  AR 681.  Moreover, at oral argument, Defendant did not dispute that the

agency had decided that the single issue for McLaren's group appeal is the question about how to

correctly allocate Medicare Part C days regardless of which fraction the provider appealed from.

*See* May 22, 2020 Hrg. Tr. (Rough at 15).  Understood in this light, Plaintiff's argument reduces

to the contention that, because the Board agreed to consider both the Medicare and Medicaid

fraction in this group appeal of the Medicare Part C issue, it was arbitrary and capricious of the

Board to deny jurisdiction over McLaren Flint's appeal merely because that appeal arose from an

adjustment only to the Medicaid fraction.  *See id.* (Rough at 1–2) (arguing that because the Board

agreed to treat the Part C days as a single issue regardless of which fraction was implicated, it

was arbitrary and capricious to exclude Plaintiff from the appeal); Dkt. 22 at 5–6.

The problem with this argument is that the Board did not conclude that it lacked

jurisdiction simply because the Medicare fraction and Medicaid fraction are separate issues.

Rather, it decided only that the RNPR did not address the proper treatment of Plaintiff's Part C

days and, accordingly, did not reopen the only question at issue in the group appeal—that is, the

Board's allocation of Part C patient days.  *See* AR 9.  What matters is not that Plaintiff appealed

---

[8]  The McLaren Group also requested that the Board bifurcate the "Rehab Provider," McLaren Flint," to a separate group.  AR 685.  The Board granted that request and "bifurcated McLaren Flint . . . from the . . . DSH Medicaid Fraction Part C Days group appeal" and transferred it to "the Hall Render 2008 Rehab LIP Medicare/Medicaid Part C Days Group II."  AR 681.  The Court does not understand this to mean that McLaren Flint was removed from the McLaren Group Appeal.  Indeed, a June 20, 2018 form shows that McLaren Flint was part of the McLaren Group Appeal that had been consolidated in March 2018.  AR 463.  Rather, it appears that the Board merely separated a specific issue relevant to McLaren Flint—"the Inpatient Rehabilitation (Rehab Unit),"AR 681—pursuant to 42 C.F.R. § 405.1837(g).  That regulation provides that if a "provider involved in a group appeal . . . also wishes to appeal a specific matter that does not raise a factual or legal question common to each of the other providers in the group," the provider may "file a separate request for a hearing as part of a different group appeal."  *Id.*

from an adjustment to its Medicaid fraction (rather than its Medicare fraction) but that the RNPR that it timely appealed did not consider (much less adjust) the treatment of Part C days.  *See* AR 709 (explaining that the reopening was limited only to Medicaid days and that Part C days were not to be included); AR 9 (same).  The Board's decision is consistent with the governing regulations and is supported by the record.  As explained above, under the governing regulations, the Board may grant EJR only if the provider properly and timely invokes the review process. *See* 42 C.F.R. § 405.1842(d) (providing that the Board may grant EJR only if it has jurisdiction over the "specific matter at issue").  A provider has a right to participate in a group appeal, moreover, only if the provider has a right to raise the specific question raised by the group appeal.  *See* 42 C.F.R. § 405.1837(a)(1) (setting forth the requirements for a group appeal, including the requirement that the provider "satisfies individually the requirements for a Board hearing").  There is no question (1) that the only matter revised in the reopening was the count of Plaintiff's Medicare eligible days, *see* May 22, 2020 Hrg. Tr. (Rough at 9) (conceding that the adjustment was only to the "Medicaid days"), and (2) that the treatment of Part C days was expressly excluded from the reopening, *see* AR 709 (directing that Plaintiff "verify that [its] listings . . . [did] not include any claim for Labor & Delivery days, Dual Eligible days, Medicare [Part C] days, or State Assistance days").  Because the MAC adjusted only the count of Medicaid-eligible days in the RNPR, the Board reasonably concluded that Plaintiff did not have a right to appeal the separate allocation-of-Part-C-days issue.

Plaintiff rests its argument to the contrary on the fact that Medicare-eligible days and the allocation of Part C days are both sub-components of the DSH calculation.  *See* May 22, 2020 Hrg. Tr. (Rough at 2–5, 24) (arguing that the DSH calculation "present[s] a single legal question").  This contention boils down to little more than the proposition that applying the

issue-specific approach to bifurcate different components of the DSH calculation is arbitrary and capricious. *See* Dkt. 16-1 at 10–11. But that is not so. As Plaintiff acknowledged at oral argument, it has found no authority, and the Court is aware of none, in which a court has held the DSH calculation is a single issue for the purposes of the issue-specific approach, *see* May 22, 2020 Hrg. Tr. (Rough at 24); rather, in all of the cases identified by the parties, and by the Court's independent research, courts have uniformly held that the DSH payment is sufficiently complex to implicate an array of separate issues. *See, e.g.*, *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 854–56 (7th Cir. 2009). Of particular relevance here, the complexity of the Medicaid fraction and the interest in administrative finality weigh heavily in favor of permitting the Board, in its discretion, to treat different components within each fraction as separate issues. *See, e.g.*, *Saint Thomas Hosp. v. Sebelius*, 705 F. Supp. 2d 905, 913–15 (M.D. Tenn. 2010) (upholding the Board's decision that the reopening of one aspect of the Medicaid fraction did not require that it exercise jurisdiction over another, unrevised, aspect of the same fraction); *St. Dominic Jackson Mem. Hosp. v. Sebelius*, No. 12-cv-832, 2014 WL 8515280, at *8–9 (S.D. Miss. Mar. 31, 2014) (same); *see also Franciscan St. Margaret Health v. Azar*, 407 F. Supp. 3d 28, 34 (D.D.C. 2019) (holding that, even if a provider's appeal involved some aspect of the Medicaid fraction, the Board was within its discretion to find that the issue it sought to appeal was not common with a group appeal that touched on a different aspect of the Medicaid fraction). Given that the Board's position is both reasonable and amply supported, the Court is unpersuaded that the Board acted unreasonably or in excess of its authority in declining to treat Plaintiff's appeal of its RNPR, which merely adjusted the count of Medicaid days, as raising a separate issue from the proper treatment of Medicare Part C days. The fact that the Board agreed to treat challenges to the proper treatment of Medicare Part C days—whether raised with respect

to the Medicare or the Medicaid fraction—did not open the door to treating all challenges to the Medicare and Medicaid fractions as alike.

Plaintiff's fallback argument is also unavailing.[9]  That argument posits that, even if Plaintiff's appeal involved a separate issue, the Board should have "separate[ed] the Plaintiff Hospital from the CIRP group and establish[ed] it as an individual appeal on the Dual Eligible Medicaid fraction issue."  Dkt. 21 at 10.  Even assuming that the Board had an obligation to establish a separate appeal, that appeal would also have been confined to those matters revised in the RNPR.  That conclusion follows from the governing regulations, *see* 42 C.F.R. § 405.1835(a)(1) (limiting review of RNPRs "solely to those matters that are specifically revised"), and is also consistent with—and arguably compelled by—the statute, which gives a provider only 180 days after receiving notice of the MAC's final determination to request a hearing before the Board, *see* 42 U.S.C. § 1395oo(a)(3).  As a result, the Board's decision that it lacked administrative jurisdiction over Plaintiff's challenge to the exclusion of Part C days from its Medicaid fraction would have applied with equal force to any separate appeal.

---

[9]  At oral argument, Plaintiffs' counsel suggested for the first time that McLaren Flint did not have a reason to challenge the allocation of Part C days until the MAC adjusted the Medicaid-days count; it was that adjustment, according to counsel, that made Plaintiff eligible for a DSH adjustment.  *See* May 22, 2020 Hrg. Tr. (Rough at 7).  This argument fails for three reasons.  First, the Court asked Plaintiff if there was any support for that proposition in the record, and he was unable to identify any.  *Id* (Rough at 25) ("I don't know if those were in the record.").  Second, the issue was not raised in any of Plaintiff's briefs.  *See* Dkt. 16-1; Dkt. 21.  Third, and most importantly, although this contention might weigh on the equities of Plaintiff's challenge, it does not address the fact that Plaintiff could have appealed both the count of Medicaid eligible days and the allocation to Part C days within 180 days of the MAC's original NPR.  *See* May 22, 2020 Hrg. Tr. (Rough at 20–21) (explaining that providers should appeal adjustments if they believe they are erroneous and might have downstream effects).  Thus, if Plaintiff believed that the MAC erroneously calculated multiple components of the DSH payment, it could have—and should have—appealed those issues within the original 180-day window.

In the end, Plaintiff cannot avoid the consequences of its failure to timely appeal its original NPR.  Had it timely appealed that determination, the Board would have had jurisdiction over the Medicare Part C issue.  But having missed that window, Plaintiff cannot now use its appeal of the RNPR, which did not address the Medicare Part C issue, to bring a late appeal of the Medicare Part C issue.  The Board's decision, accordingly, was neither arbitrary and capricious nor contrary to law.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, Dkt. 16 will be **DENIED**, and Defendant's cross-motion for summary judgment, Dkt. 20, will be **GRANTED**.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 31, 2020